UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RED APPLE DENTAL PC, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>THE HARTFORD FINANCIAL SERVICES GROUP, INC. and SENTINEL INSURANCE COMPANY, LTD.,<br><br>    Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Red Apple Dental PC ("Plaintiff" or "Red Apple") brings this case on behalf of itself and all others similarly situated, against Defendant The Hartford Financial Services Group, Inc. and Defendant Sentinel Insurance Company, Ltd. (collectively, "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1.      Red Apple is a full-service family dental practice that provides dental services to both children and adults. Red Apple takes pride in meeting the needs of its clients, including their overall health.

2.      Like many dental practices in New York, Red Apple was forced to significantly curtail its dental practice due to COVID-19 (also known as the "Coronavirus" or "SARS-CoV-2"), and the Executive Orders issued by the Governor of New York, as well as guidance issued by the New York Department of Health, which prohibit all non-emergency dental services.

3.      Red Apple sought to protect itself – and believed that it had protected itself – in the event that its operations were suspended or reduced for reasons outside of its control beyond just damage to the physical premises (such as fire), by purchasing an "all-risk" property Spectrum Business Owner's Policy through Defendants (the "Special Property Coverage Form"). *See*

Exhibit A. An "all-risk" property policy provides broad coverage for losses resulting from any cause unless expressly excluded.

4.      Among other coverages, the Special Property Coverage Form specifically includes coverage for Business Income for twelve (12) months of actual loss sustained. The policy also provides coverage for Action of Civil Authority for thirty (30) days.

5.      The Business Income and Civil Authority coverages purchased by Plaintiff do not include, and are not subject to, any exclusion for losses caused by viruses or pandemics. Had Defendants, as the drafters of the policy, wanted to exclude the risks of a virus or a pandemic, and related issues, like closure orders and social distancing, they could easily have done so in plain text (without trying to retroactively rewrite their policies).

6.      Notwithstanding, when Plaintiff suffered an actual loss of Business Income as a result of a covered cause of loss, Defendants wrongfully – and in direct contravention of the policy – denied Plaintiff's insurance claim. *See* Exhibit B. Plaintiff is not alone. Defendants have systematically refused to pay all their insureds under their Business Income and Civil Authority coverages for losses suffered due to COVID-19, regardless of whether the implicated insurance policy has a virus exclusion or not.

## PARTIES

7.      Plaintiff Red Apple Dental PC is a professional corporation registered in New York with its principal place of business in Montgomery, New York. Red Apple provides dental care to patients.

8.      Defendant The Hartford Financial Services Group, Inc. ("The Hartford") is a Delaware company with its principal place of business in Hartford, Connecticut. The Hartford is a financial holding company for a group of insurance and non-insurance subsidiaries.

2

9.      Defendant Sentinel Insurance Company, Ltd. ("Sentinel") is a Connecticut company with its principal place of business in Hartford, Connecticut. Sentinel is a wholly owned subsidiary of The Hartford. At all relevant times, Sentinel sold and issued insurance policies in the State of New York, including, without limitation, to Red Apple.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because Plaintiff, as well as other members of the Classes, and Defendants are citizens of different states, and because: (a) the Classes consist of at least 100 members; (b) the amount in controversy exceeds $5,000,000 exclusive of interest and costs; and (c) no relevant exceptions apply to Plaintiff's claim.

11.     Alternatively, this Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because Plaintiff and Defendants are citizens of different states, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

12.     Venue is proper in this District under 28 U.S.C. § 1391(b)(3) because a substantial portion of the acts and conduct giving rise to the claims occurred within the District.

## FACTUAL BACKGROUND

13.     Plaintiff pays an annual premium of $1,715.00 to Defendants, who issued to Plaintiff a renewal of Policy No. 76 SBW ZM9089, for the annual period beginning January 31, 2020. Plaintiff performed all its obligations under the Policy, including the payment of premiums. The Covered Property is 2711 Albany Post Rd, Montgomery NY 12549.

14.     Some insurance policies cover specific and identified risks, such as hurricanes or fires. However, most property policies, including those sold by Defendants, are "all-risk" policies. These types of policies cover <u>all</u> risks of loss, and only exclude narrow and specifically enumerated risks.

15.     In the Special Property Coverage Form (the policy issued to Plaintiff), Defendants agreed to pay "for direct physical loss of or physical damage to Covered Property ... caused by or resulting from a Covered Cause of Loss." A Covered Cause of Loss is defined as all "RISKS OF DIRECT PHYSICAL LOSS" except those that are expressly and specifically listed in the Limitations or Exclusions sections of the policy. *See* Exhibit A, Special Property Coverage Form, at A.3.

16.     Losses due to COVID-19 and the Closure Orders (defined below) are a Covered Cause of Loss under Defendants' policies with the Special Property Coverage Form because they constitute RISKS OF DIRECT PHYSICAL LOSS and are not otherwise excluded.

17.     In the Special Property Coverage Form, apart from general coverage, as part of additional coverages, Defendants agreed to pay for Plaintiff's actual loss of Business Income sustained due to the suspension of Plaintiff's operations caused by direct physical loss of *or* physical damage to property. Specifically, the Policy provides:

> o.  **Business Income**
>
> (1) We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet of the "scheduled premises", caused by or resulting from a Covered Cause of Loss.
>
> (4) Business Income means the:
>
> (a) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no direct physical loss or physical damage had occurred; and
>
> (b) Continuing normal operating expenses incurred, including payroll.

*See* Exhibit A, Special Property Coverage Form, at A.5.o.

18.     The Special Property Coverage Form also includes Civil Authority coverage, under which Defendants agreed to pay for the actual loss of Business Income sustained when access to the scheduled premises is specifically prohibited by order of a civil authority as the direct result of

4

a Covered Cause of Loss to property in the immediate area. *See* Exhibit A, Special Property Coverage Form, at A.5.q ("This insurance is extended to apply to the actual loss of Business Income you sustain when access to your 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your 'scheduled premises'").

19.    As explained below, the proliferation of COVID-19 throughout the State of New York and within the New York City metropolitan area, and the related shut down orders issued by local, state, and federal authorities constitute a Covered Cause of Loss triggering the Business Income, and Civil Authority provisions of the Special Property Coverage Form.

**A. *Covered Cause of Loss***

**1.    <u>COVID-19</u>**

20.    On January 30, 2020, the World Health Organization ("WHO") declared the COVID-19 outbreak a "Public Health Emergency of International Concern."[1] Later, on March 11, 2020, the WHO declared COVID-19 a global health pandemic. On March 13, 2020, President Trump declared a national emergency in the face of a growing public health and economic crisis due to the COVID-19 global pandemic.

21.    In the State of New York alone, there have been over 321,000 confirmed cases of COVID-19, and approximately 24,500 related deaths.[2]

---

[1] https://www.who.int/news-room/detail/30-01-2020-statement-on-the-second-meeting-of-the-international-health-regulations-(2005)-emergency-committee-regarding-the-outbreak-of-novel-coronavirus-(2019-ncov) (last visited May 5, 2020).

[2] https://www.nytimes.com/2020/05/02/nyregion/coronavirus-new-york-update.html (last visited May 5, 2020).

22.     In Orange County, in which Montgomery is location there have been over 9250 confirmed cases of COVID-19, and nearly 350 deaths. In Montgomery itself there have been 514 confirmed cases.[3]

23.     Research suggests that the virus that causes COVID-19 remains stable and transmittable for up to three hours in aerosols, up to four hours on copper, up to twenty-four hours on cardboard, and up to two to three days on plastic and stainless steel.[4]

### 2.     New York Closure Orders

24.     The presence and physical spread of this deadly virus have caused civil authorities to issue orders requiring the suspension of businesses, including civil authorities with jurisdiction over Plaintiff's dental practice, in an effort to slow down the spread of the virus. Nearly every state in the country has or had an order restricting the operation of non-essential businesses.

25.     On March 7, 2020, New York Governor Andrew Cuomo issued Executive Order No. 202, "Declaring A Disaster Emergency in the State of New York" (the "March 7 Order"). The March 7 Order recited that "travel-related cases and community transmission of COVID-19 have been documented in New York State and more are expected to continue."

26.     On March 18, 2020, Governor Cuomo issued Executive Order No. 202.6, "Continuing Temporary Suspension and Modification of Laws Relating to the Disaster Emergency" (the "March 18 Order"). The March 18 Order required that all non-essential businesses and non-profits reduce their in-person workforce by 50% no later than March 20 at 8:00 p.m. Any business not specifically listed in the March 18 Order (as essential) would be deemed

---

[3] https://dailyvoice.com/new-york/southorange/news/covid-19-heres-latest-rundown-of-orange-county-cases-by-town/787474/ (last visited May 6, 2020).

[4] https://www.nih.gov/news-events/nih-research-matters/study-suggests-new-coronavirus-may-remain-surfaces-days (last visited May 5, 2020).

essential only upon requesting and receiving such an opinion from the Empire State Development Corporation. The Empire State Development Corporation has only deemed *emergency* dental services as essential.

27.     On March 20, 2020, Governor Cuomo issued Executive Order No. 202.8, "Continuing Temporary Suspension and Modification of Laws Relating to the Disaster Emergency" (the "March 20 Order"). The March 20 Order required that all non-essential businesses and non-profits reduce their in-person workforce by 100% no later than March 22 at 8:00 p.m., and businesses providing essential services or functions may only operate to the extent "necessary to provide such service or function." Any violations of the March 20 Order are subject to a civil penalty not to exceed $2,000 per violation, with additional violations punishable by civil penalties increasing to $5,000 and $10,000 if the violations were a serious threat to the health and safety of individuals or patients. *See also* https://coronavirus.health.ny.gov/new-york-state-pause.

28.     The March 7 Order, March 18 Order, and March 20 Order are collectively referred to as the "Closure Orders."

29.     In addition, on March 16, 2020, the American Dental Association ("ADA") recommended that "dentists nationwide postpone elective procedures in response to the spread of the coronavirus disease, COVID-19, across the country." The American Dental Hygienists' Association ("ADHA") and the Centers for Disease Control and Prevention ("CDC") have made similar recommendations to postpone elective and non-urgent visits.

30.     The purpose of the Closure Orders, as well as the recommendations of the New York Department of Health, the ADA, and the CDC, were to slow the physical spread of COVID-19.

31.     As a result of COVID-19, the Closure Orders, as well as information from other sources, including the New York Department of Health, Plaintiff complied and ceased almost all its operations on March 17, 2020.

    **3.**     **Impact of COVID-19 and Closure Orders**

32.     Red Apple and the proposed Classes defined below have suffered an actual loss of Business Income due to the suspension of operations. In the case of Red Apple, it has been forced to almost entirely cease business activities.

33.     The presence of COVID-19 and the Closure Orders (and similar civil authority orders) constitute a Covered Cause of Loss, as they constitute "RISKS OF DIRECT PHYSICAL LOSS."

34.     Moreover, the suspension of Plaintiff's dental operation was caused by "direct physical loss of *or* physical damage to property" in the form of both a loss of access to the property for business purposes caused by COVID-19, and the Closure Orders and the actual damage in the form of the likely physical presence of COVID-19 on or within the property.

35.     COVID-19 and the Closure Orders also implicated the Civil Authority coverage, because access to the scheduled premises was prohibited by order of a civil authority as the direct result of a "RISK[] OF DIRECT PHYSICAL LOSS" to property in the immediate area of the scheduled premises from COVID-19.

36.     Having suffered a necessary suspension of operations, on or about April 14, 2020, Plaintiff submitted a claim to Defendants under the policy. Almost immediately, and clearly without any true investigation, Defendants denied Plaintiff's claim. *See* Exhibit B.

37.     Defendants based this denial primarily on:

    a.   The lack of "physical loss or damage caused by or resulting from a Covered Cause of Loss to property at a scheduled premises";

b. A purported lack of "information to indicate that a civil authority issued an order as a direct result of a covered cause of loss to property in the immediate area of the scheduled premises";

c. And a "pollution exclusion" that excludes losses "caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants and contaminants" under which pollution and contaminants are defined as "solid, liquid, gaseous or thermal irritant or contaminant[s]…."

38.     None of these three purported reasons are credible bases for Defendants' denial of Plaintiff's claim. First, as described above, in the context of COVID-19 and the Closure Orders, there was a suspension of operations caused by "physical loss or damage caused by or resulting from" a "Covered Cause of Loss" to property at a scheduled premise. Second, it strains credibility for Defendants to assert that they were unaware of the statewide Closure Orders implicating the Civil Authority coverage. Third, a virus *is not* a solid, liquid, gaseous or thermal irritant or contaminant and, therefore, does not implicate the pollution exclusion.

39.     The simple truth is that Defendants – without any investigation and in contravention of their contract – pre-determined their intent to deny coverage for the COVID-19 pandemic (and related civil authority orders), despite the complete absence, in the context of Business Income or the Civil Authority coverage, of a virus or pandemic exclusion.

40.     Defendants, as sophisticated insurance companies, know how to exclude viruses when they want to and, in fact, have done so in other policies. Indeed, the Insurance Services Offices, Inc. ("ISO") developed a virus exclusion in the wake of the outbreak of Severe Acute Respiratory Syndrome or "SARS" in the early 2000s. Defendants' policy does not contain any relevant exclusions for viruses even though such exclusions are now commonplace.

41.     In fact, the policy at issue includes an "Ordinance or Law" coverage provision – which is not implicated by this case – wherein Defendants excluded both "pollutants and

contaminants" *and* "bacteria or virus" separately. *See* Exhibit A at A.5.j.(2). Comparatively, in the context of Business Income and Civil Authority coverages, Defendants chose to only exclude "pollutants" and "contaminants," but *not* "bacteria or virus."

42.     Boiled to its essence, the subject matter of this case is simple. Defendants have, on a widespread and class-wide basis, refused to provide Business Income and Civil Authority coverage due to COVID19 and the resultant executive orders by civil authorities that have required the suspension of practice *no matter* the language or scope of coverage in any particular insurance policy.

## CLASS ALLEGATIONS

43.     Plaintiff brings this action individually and on behalf of the following similarly situated classes (the "Classes") pursuant to Rule 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

44.     Plaintiff seeks to represent nationwide classes defined as follows:

### Business Income Breach Class

All persons and entities that: (a) had Business Income coverage under a property insurance policy without a virus exclusion issued by Defendants; (b) suffered a suspension of their operations related to COVID-19 at the premises covered by their property insurance policy; (c) made a claim under their property insurance policy issued by Defendants; and (d) were denied Business Income coverage by Defendants.

### Civil Authority Breach Class

All persons and entities that: (a) had Civil Authority coverage under a property insurance policy without a virus exclusion issued by Defendants; (b) suffered a loss of Business Income caused by an order of a civil authority that specifically prohibited access to the premises covered by their property insurance policy as the direct result of the risks caused by COVID-19 to property in the immediate area of the insureds covered property; (c) made a claim under their property insurance policy issued by Defendants; and (d) were denied Civil Authority coverage by Defendants for the loss of Business Income.

45.     Plaintiff also seeks to represent nationwide classes defined as follows:

**Business Income Declaratory Judgment Class**

All persons and entities with Business Income coverage under a property insurance policy without a virus exclusion issued by Defendants that suffered a suspension of their operations related to COVID-19 at the premises covered by their property insurance policy.

**Civil Authority Declaratory Judgment Class**

All persons and entities with Civil Authority coverage under a property insurance policy without a virus exclusion issued by Defendants that suffered a loss of Business Income caused by an order of a civil authority that specifically prohibited access to the premises covered by their property insurance policy as the direct result of the risks caused by COVID-19 to property in the immediate area of the insureds covered property.

46.     Excluded from the proposed Classes are Defendants, any parent companies, subsidiaries, affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter, as well as members of their staff and immediate families. Plaintiffs reserve the right to amend the Class definitions above or add appropriate subclasses following discovery.

47.     This action is brought and may be properly maintained as a class action. There is a well-defined community of interests in this litigation and the members of the Classes are easily ascertainable.

48.     The members in the proposed Classes are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of the Classes in a single action will provide substantial benefits to the parties and the Court.

49.     This action involves common questions, which predominate over questions affecting individual members of the Classes, including (without limitation):

- whether members of the Classes suffered a covered cause of loss based on the common policies issued by Defendants;

- whether COVID-19 (and/or an order of a civil authority related to COVID-19) constitutes a Covered Cause Of Loss;

- whether Defendants' Business Income coverage applies to a suspension of business operations caused by COVID-19 (and/or by an order of a civil authority related to COVID-19);

- whether a suspension of business operations caused by COVID-19 (and/or by an order of a civil authority related to COVID-19) qualifies as a suspension of business operations caused by direct physical loss of or physical damage to property;

- whether an order by a civil authority related to COVID-19 qualifies an insured for Civil Authority coverage;

- whether members of the Classes sustained damages as a result of Defendants denying their claims made under the common policies; and

- whether Defendants breached its contracts of insurance by denying Class members' Business Income and Civil Authority claims related to COVID-19.

50.     Defendants engaged in a course of common conduct that gave rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Classes. Identical business practices and harms are involved. Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

51.     Plaintiff's claims are typical of those of the members of the Classes because they are based on the same underlying facts, events, and circumstances relating to Defendants' conduct, including the systematic denial of insurance coverage related to Business Income insurance and COVID-19.

52.     Plaintiff will fairly and adequately represent and protect the interests of the Classes, has no interests incompatible with the interests of the Class members, and has retained counsel competent and experienced in class action and consumer protection litigation.

53. Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Classes is small enough such that, absent representative litigation, it would be infeasible for many members of the Classes to redress the wrongs done to them. Moreover, individualized litigation would create potential for inconsistent judgments on identical issues and increase the delay and expense to the parties and the Court. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of adjudication by a single court.

54. As a result of the foregoing, class treatment under Federal Rule of Civil Procedure 23(b)(3) is appropriate.

55. Class treatment is also appropriate under Federal Rule of Civil Procedure 23(b)(1). Plaintiff seeks class-wide adjudication related to Defendants' Business Income, and Civil Authority coverages. The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent adjudications.

56. Class treatment is also appropriate under Federal Rule of Civil Procedure 23(b)(2). Defendants acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive and declaratory relief.

## CLAIMS FOR RELIEF

### CLAIM I: BREACH OF CONTRACT - Business Income Coverage
### (Plaintiff Individually and on Behalf of the Business Income Breach Class)

57. Plaintiff hereby realleges and incorporates by reference all allegations raised in the preceding paragraphs as if fully stated herein.

58. Plaintiff brings this claim against Defendants individually and on behalf of the members of the Business Income Breach Class.

59.     Plaintiff's insurance policy, as well as those of the members of the Business Income Breach Class, are contracts under which premiums were paid to Defendants in exchange for promises to pay Plaintiff and the Business Income Breach Class Members' losses for claims covered by Defendants' all-risk policy.

60.     The Special Property Coverage Form states that Defendants "will pay for the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration'... The suspension must be caused by direct physical loss of or physical damage to property at the 'scheduled premises'…caused by or resulting from a Covered Cause of Loss."

61.     "Operations" is defined as "business activities occurring at the 'scheduled premises' and tenantability of the 'scheduled premises.'"

62.      "Business Income" is defined as "Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no direct physical loss or physical damage had occurred" and "[c]ontinuing normal operating expenses incurred, including payroll."

63.     COVID-19, and/or orders of civil authority related to COVID-19 (like the Closure Orders) caused "direct physical loss of or damage to" the "Covered Property" under the Plaintiff's policy, and the policies of the other Business Income Breach Class members, by denying use of and damaging the Covered Property, and by causing a necessary suspension and reduction of operations during a period of restoration.

64.     Losses caused by COVID-19, and/or orders of civil authority related to COVID-19 (like the Closure Orders) thus triggered the Business Income provision of Plaintiff's and the other members of the Business Income Breach Class' insurance policies.

65.     Plaintiff and the members of the Business Income Breach Class have complied with all applicable provisions of their policies.

66.     Plaintiff and the members of the Business Income Breach Class made timely claims under their property insurance policies issued by Defendants.

67.     Defendants have breached their coverage obligations under Plaintiff and the Business Income Breach Class Members' policies by denying coverage for any Business Income losses incurred in connection with the COVID-19 and/or orders of civil authority related to COVID-19 (like the Closure Orders).

68.     As a direct and proximate result of Defendants' breaches, Plaintiff and the members of the Business Income Breach Class have sustained damages for which Defendants are liable, in an amount to be established at trial.

### CLAIM II: BREACH OF CONTRACT – Civil Authority Coverage
**(Plaintiff Individually and on Behalf of the Civil Authority Breach Class)**

69.     Plaintiff hereby realleges and incorporates by reference all allegations raised in the preceding paragraphs as if fully stated herein.

70.     Plaintiff brings this claim against Defendants individually and on behalf of the members of the Civil Authority Breach Class.

71.     Plaintiff's policy, as well as those of the members of the Civil Authority Breach Class, are contracts under which premiums were paid to Defendants in exchange for promises to pay Plaintiff and the Civil Authority Breach Class Members' losses for claims covered by the policy.

72.     Plaintiff's policy, as well as those of the members of the Civil Authority Breach Class are extended to apply to losses "sustain[ed] when access to your 'scheduled premises' is

specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your 'scheduled premises.'"

73.    COVID-19 caused the Governor of the State of New York to issue the Closure Orders, which specifically prohibited access to Plaintiff and the Civil Authority Breach Class Members' scheduled premises based on "RISKS OF DIRECT PHYSICAL LOSS" to property in the immediate area of the scheduled premise.

74.    Losses caused by COVID-19 thus triggered the Civil Authority provision of Plaintiff and the Civil Authority Breach Class Members' insurance policies.

75.    Plaintiff and the Civil Authority Breach Class Members have complied with all applicable provisions of their policies.

76.    Plaintiff and the Civil Authority Breach Class Members made timely claims under their property insurance policies issued by Defendants.

77.    Defendants have breached their coverage obligations under Plaintiff and the Civil Authority Breach Class Members' policies by denying coverage for any Civil Authority losses incurred in connection with the COVID-19 and/or orders of civil authority related to COVID-19 (like the Closure Orders).

78.    As a direct and proximate result of Defendants' breaches, Plaintiff and the Civil Authority Breach Class Members have sustained damages for which Defendants are liable, in an amount to be established at trial.

### CLAIM III: DECLARATORY JUDGMENT – Business Income Coverage
### (Claim Brought on Behalf of the Business Income Declaratory Judgment Class)

79.    Plaintiff hereby realleges and incorporates by reference all allegations raised in the preceding paragraphs as if fully stated herein.

80.     Plaintiff brings this claim against Defendants individually and on behalf of the members of the Business Income Declaratory Judgment Class.

81.     Plaintiff's policy, as well as those of the members of the Business Income Declaratory Judgment Class, are contracts under which premiums were paid to Defendants in exchange for promises to pay Plaintiff and the Business Income Breach Class members' losses for claims covered by the policy, including Business Income claims.

82.     Plaintiff and the members of the Business Income Declaratory Judgment Class have complied with all applicable provisions of the policies.

83.     Defendants have denied claims related COVID-19 and/or orders of civil authority related to COVID-19 (like the Closure Orders) on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Business Income Declaratory Judgment Class have filed a claim.

84.     An actual case or controversy exists regarding Plaintiff and the Business Income Declaratory Judgment Class Members' rights and Defendants' obligations under the policies to provide reimbursements for the full amount of Business Income losses incurred by Plaintiff and the Business Income Declaratory Judgment Class Members in connection with the suspension of their businesses due to the presence of COVID-19 and/or orders of civil authority related to COVID-19 (like the Closure Orders)

85.     Pursuant to 28 U.S.C. § 2201, Plaintiff and the Business Income Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

> a.   Plaintiff and the Business Income Declaratory Judgment Class Members' Business Income losses incurred in connection with necessary interruption of their businesses due to the presence of COVID-19 and/or orders of civil authority related to COVID-19 (like the Closure Orders) are insured losses under their policies; and

      b.   Defendants are obligated to pay Plaintiff and the Business Income Declaratory Judgment Class Members for the full amount of the Business Income losses incurred and to be incurred in connection with the period of restoration and the necessary interruption of their businesses stemming from the presence of COVID-19 and/or orders of civil authority related to COVID-19 (like the Closure Orders).

### CLAIM IV: DECLARATORY JUDGMENT – Civil Authority Coverage
### (Claim Brought on Behalf of the Civil Authority Declaratory Judgment Class)

86.    Plaintiff hereby realleges and incorporates by reference all allegations raised in the preceding paragraphs as if fully stated herein.

87.    Plaintiff brings this claim against Defendants individually and on behalf of the Civil Authority Declaratory Judgment Class.

88.    Plaintiff's policy, as well as those of the Civil Authority Declaratory Judgment Class Members, are contracts under which premiums were paid to Defendants in exchange for promises to pay Plaintiff and the other Civil Authority Declaratory Judgment Class Members' losses for claims covered by the policy, including Civil Authority claims.

89.    Plaintiff and the Civil Authority Declaratory Judgment Class Members have complied with all applicable provisions of the policies.

90.    Defendants have denied claims related to Civil Authority orders in connection with COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Civil Authority Declaratory Judgment Class have filed a claim.

91.    An actual case or controversy exists regarding Plaintiff and the Civil Authority Declaratory Judgment Class Members' rights and Defendants' obligations under the policies to provide reimbursements for the full amount of Business Income losses incurred by Plaintiff and the Civil Authority Declaratory Judgment Class Members caused by an order of a civil authority

that specifically prohibited access to the premises covered by their property insurance policy as the direct result of the risks caused by COVID-19 to property in the immediate area of the insureds covered property.

92.     Pursuant to 28 U.S.C. § 2201, Plaintiff and the Civil Authority Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

    a.  Plaintiff and the Civil Authority Declaratory Judgment Class Members' Business Income losses caused by an order of a civil authority that specifically prohibited access to the premises covered by their property insurance policy as the direct result of the risks caused by COVID-19 to property in the immediate area of the insureds covered property are insured losses under their policies; and

    b.  Defendants are obligated to pay Plaintiff and the Civil Authority Declaratory Judgment Class for the full amount of the Business Income losses incurred and to be incurred caused by an order of a civil authority that specifically prohibited access to the premises covered by their property insurance policy as the direct result of the risks caused by COVID-19 to property in the immediate area of the insureds covered property.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes, respectfully requests that the Court enter judgment against Defendants as follows:

    i.  Entering an order certifying the following proposed nationwide Classes: (1) Business Income Breach Class; (2) Civil Authority Breach Class; (3) Business Income Declaratory Judgment Class; and (4) Civil Authority Declaratory Judgment Class;

    ii.  Entering an order designating Plaintiff as Class Representative, and appointing Plaintiff's undersigned attorneys as Counsel for the Classes;

    iii.  Entering judgment on Counts I and II in favor of Plaintiff, the Business Income Breach Class, and the Civil Authority Breach Class; and awarding damages for breach of contract in an amount to be determined at trial;

    iv.  Entering declaratory judgments on Counts III and IV in favor of Plaintiff, the members of the Business Income Declaratory Judgment Class, and the Civil Authority Declaratory Judgment Class as follows:

- Business Income, and Civil Authority losses incurred in connection with COVID-19 and/or orders of civil authority related to COVID-19 (like the Closure Orders) are insured losses under their Policies;

- Defendants are obligated to pay for the full amount of the Business Income, and Civil Authority losses incurred and to be incurred in connection with COVID-19 and/or orders of civil authority related to COVID-19 (like the Closure Orders);

v.    Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded;

vi.   Ordering Defendants to pay reasonable attorneys' fees and costs of suit; and

vii.  Ordering such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable.


Date:  May 6, 2020                                Respectfully submitted,

                                                  /s/Daniel J. Walker

                                                  Daniel J. Walker (NY Bar No. 4421244)
                                                  **BERGER MONTAGUE PC**
                                                  2001 Pennsylvania Avenue, NW
                                                  Suite 300
                                                  Washington, DC 20006
                                                  T: 202-559-9745
                                                  dwalker@bm.net

                                                  Shanon J. Carson*
                                                  Y. Michael Twersky*
                                                  **BERGER MONTAGUE PC**
                                                  1818 Market Street
                                                  Suite 3600
                                                  Philadelphia, PA 19103
                                                  T: 215-875-4656
                                                  scarson@bm.net
                                                  mitwersky@bm.net

Alex R. Straus (NY Bar No. 5175419)
**GREG COLEMAN LAW PC**
16748 McCormick Street
Los Angeles, CA 91436
T: 917-471-1894
alex@gregcolemanlaw.com

Jonathan B. Cohen*
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
T: 865-247-0080
F: 865-522-0049
jonathan@gregcolemanlaw.com

Daniel K. Bryson*
Patrick M. Wallace*
**WHITFIELD BRYSON LLP**
900 W. Morgan Street
Raleigh, NC 27605
T: 919-600-5000
F: 919-600-5035
dan@whitfieldbryson.com
pat@whitfieldbryson.com

*pro hac vice forthcoming*

**Attorneys for Plaintiff and the putative classes**